IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

ROGUELL BLUE,                                  *

        Plaintiff,                          *

v.                                                        Case No.: GJH-15-1024

                                                    *

SUKHJIT BATTH,

                                                    *

        Defendant.                          *

 *    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OPINION

This case arises out of the alleged false arrest, imprisonment, and unconstitutional seizure

of Plaintiff Roguell Adam Blue ("Plaintiff" or "Blue") by Defendant Sukhjit Batth ("Defendant"

or "Officer Batth"). The claims are brought pursuant to 42 U.S.C. § 1983 and state law. Presently

pending before the Court is Defendant's Motion to Dismiss/Summary Judgment, ECF No. 45,

and Plaintiff's Cross-Motion for Summary Judgment, ECF No. 46. No hearing is necessary. *See*

Loc. R. 105.6. For the following reasons, Defendant's Motion is denied, in part, and granted, in

part. Plaintiff's Cross-Motion is denied. The parties are instructed to submit renewed cross-

motions addressing the issue of qualified immunity.

### I.     BACKGROUND

On November 23, 2011, Roguell Blue was working as an agent for the United States

Fugitive Enforcement Agency. ECF No. 44 at 2.[1] Blue had an assignment from Dominion Bail

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated
by that system.

Bonds of Upper Marlboro, Maryland, to serve a valid legal warrant on a fugitive.[2] *See id.* ¶ 6. At the time, Blue was wearing a badge, a tactical utility vest, and a "lawfully obtained" MP15 semi-automatic rifle hanging from a shoulder harness around his neck. *Id.* Blue and a fellow agent, Dana Yeargin, located the fugitive at 1015 Huntsworth Court in Capitol Heights, Maryland. *Id.* ¶ 7. Blue apprehended the fugitive and began to take down information from the male resident of the house. *Id.* ¶ 8. Yeargin took the arrested fugitive to Blue's vehicle, while Blue remained in the house. *Id.* ¶ 9. While Blue was still inside the house, a neighbor came over to complain that the male resident's dog had walked over to his house and damaged the carpet. *Id.* ¶ 10. Blue informed the neighbor that he was not able to help at that time, and the neighbor became upset and called 911, reporting that Blue was "a bounty hunter." *Id.* ¶ 11. As Blue was about to leave with the fugitive, several Prince George's County police vehicles arrived and began to question Blue. *See id.* ¶ 12.

Blue showed the officers "a picture of the fugitive, a copy of the warrant for the fugitive, which contained the name, Dominion Bail Bonds, and Plaintiff's identification." *Id.* ¶ 12. The police officers verified the validity of the warrant and also verified the identity of the fugitive. *Id.* ¶ 13. A debate ensued between Blue and the police officers over whether Blue needed a permit for the semiautomatic rifle he was carrying. *Id.* ¶ 14. Blue maintained that he needed no permit, but the officers were "unsure." *Id.* Officer Batth then told Blue, "go ahead, since you got your man, go ahead and secure and put up your weapon." *Id.* In response, Blue ejected the magazine, broke down the weapon, and secured it in the trunk. *Id.* A "ranking official" then arrived on the scene. *Id.* ¶ 15. Some of the officers began going through Blue's wallet. *Id.* Referring to Blue's

---

[2] A "fugitive" is defined as "a person who flees or tries to escape." https://www.merriam-webster.com/dictionary/fugitive (last visited Dec. 21, 2016). Agents, sometimes called "bounty hunters" are known to be "skilled professionals . . . hired by a bail bondsman to find a capture and fugitive for a monetary reward." http://www.bountyhunteredu.org/what-is-a-bounty-hunter/ (last visited Dec. 23, 2016).

firearm, the official asked Blue, "are you trying to tell me that you don't need a permit to carry or possess a shotgun or rifle in the state of Maryland?" *Id.* Blue responded, "no you don't, not a permit for a semiautomatic rifle or shotgun, only an automatic weapon, [for] which you need a class three certification." *Id.* Blue further explained that a permit is only required for an "automatic rifle," and that his "20-round magazine" was lawful. *Id.*

Despite these discussions, however, Officer Batth decided to handcuff Blue and informed him that "he was being taken in for questioning." *Id.* ¶ 16. Blue complained that the handcuffs were "too tight." *Id.* At some point, Blue reached his supervisor from Dominion Bail Bonds, Karen, on the phone, who told the officer that Blue "was legally and lawfully working for Dominion Bail Bonds and was on a lawful assignment." *Id.* Nevertheless, the police took Blue into custody and transported him to the District 3 Station in Palmer Park, Maryland. When Blue asked Officer Batth why he was being arrested, Officer Batth told Blue "you're not being arrested, you are being partially detained." *Id.* After being put in an interrogation room, Plaintiff was arrested on "weapons violations" and taken to the Prince George's County Detention Center. *Id.* ¶ 17. The charges against Blue were later dropped. *Id.*

Plaintiff filed his initial three-count Complaint in the Circuit Court of Maryland for Prince George's County against Defendants Prince George's County and Officer Sukhjit Batth on Nov. 21, 2014. ECF No. 2. Plaintiff alleged claims of False Imprisonment/False Arrest (Count I), Deprivation of Civil Rights under 42 U.S.C. § 1983 (Count II), and Failure to Train, Supervise, and Discipline under 42 U.S.C. § 1983 (Count III). Defendants removed the action to this Court on April 10, 2015, ECF No. 1, and filed a Motion to Dismiss for Failure to State a Claim with respect to Count III of the Complaint.[3] ECF No. 32. Following a Hearing on the

---

[3] At this stage of litigation, Plaintiff had filed an Amended Complaint, ECF No. 4, and a Second Amended Complaint, ECF No. 31. The Motion to Dismiss, ECF No. 32, addressed Plaintiff's Second Amended Complaint.

3

Motion on February 3, 2016, the Court entered an Order dismissing Count III of the Complaint

and terminating Prince George's County as a party to the lawsuit.[4] ECF No. 36; ECF No. 37.

Counts I and II proceeded against Officer Batth in his individual and official capacity. ECF No.

44 at 2.

      Plaintiff filed a Third Amended Complaint on March 16, 2016. ECF No. 44. Defendant

filed a Motion to Dismiss/Summary Judgment on March 30, 2016. ECF No. 45. Plaintiff filed a

Response in Opposition and Cross Motion for Summary Judgment on April 18, 2016. ECF No.

46. Defendant filed a Reply to Plaintiff's Opposition and Opposition to Plaintiff's Cross Motion

on May 5, 2016. ECF No. 48. The Motions are now ripe for resolution.

## II.    STANDARD OF REVIEW

      In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all

well-pleaded factual allegations of the complaint as true, and derives all reasonable inferences in

the light most favorable to the Plaintiffs. *See Ibarra v. United States,* 120 F.3d 472, 474 (4th

Cir.1997). To survive dismissal, "a complaint must contain sufficient factual matter . . . to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Twombly,* 550 U.S. at 556). However, a court need not accept a plaintiff's legal conclusions as

true, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.*

---

[4] Via an oral ruling, *see* ECF No. 37, the Court dismissed Plaintiff's *Monell* claim for failure to "plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of rights." *Semple v. City of Moundsville*, 195 F. 3d 708, 712 (4th Cir. 1999); *see generally Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–95 (1978).

Similarly, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In undertaking this inquiry, the Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993).

## III.   ANALYSIS

### A.   42 U.S.C. § 1983 Claim – Fourth Amendment

42 U.S.C. § 1983 establishes certain governmental liability for deprivations of constitutional rights, providing:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding . . .

42 U.S.C. § 1983. The Fourth Amendment of the Constitution, specifically, prohibits law enforcement officers from conducting unreasonable searches and seizures; and "seizure of an individual effected without probable cause is unreasonable." *See* U.S. Const. amend. IV; *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 183 (4th Cir. 1996). It is undisputed that Blue was seized within the meaning of the Fourth Amendment when Defendant handcuffed and later

5

arrested him. Thus, the next question becomes whether Officer Batth had probable cause to arrest

Blue. Probable cause exists when the "totality of the circumstances," including the facts and

circumstances within an officer's knowledge would "convince a person of reasonable caution

that an offense has been or is being committed." *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir.

2000) (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949)).

As justification for Plaintiff's arrest, Defendant cites to Prince George's County, Md.,

Code of Ordinances § 14-140(a), which provides:

> No person shall . . . have in his possession, while loaded, any
> firearm, rifle, shotgun, revolver, pistol, air gun, air rifle or any
> similar mechanism by whatever name known, which is designed
> to expel a projectile through a gun barrel by the action of any
> explosive, gas, compressed air, spring or elastic, within one
> thousand feet (1,000') of any home or residence, other than his
> own . . .

Prince George's County, Md., Code of Ordinances § 14-140(a) (2016). Blue concedes that at the

time of his arrest, he was wearing a loaded "MP15 semiautomatic rifle" around his neck, and was

near a residence other than his own. ECF No. 44 at 2. Although Blue was executing a

purportedly lawful assignment from Dominion Bail Bonds as an agent or "bounty hunter,"

Plaintiff has not claimed or established that he was exempt from this county ordinance as a

"law enforcement officer in the performance of official duty" or other recognized exception

under the municipal code. Prince George's County, Md., Code of Ordinances § 14-142(c)(2).

Thus, it would appear that Defendants had probable cause that Plaintiff was violating this County

ordinance. But the inquiry does not end there, as the Court must also consider the relevance of

Maryland State law to this arrest.

As a preliminary matter, Maryland State law defines a "semiautomatic rifle," such as

Plaintiff's, as a "regulated firearm." Md. Code, Pub. Safety § 5-101(p)(2) (2011). "Regulated

6

firearms" are subject to certain restrictions under State law. *See* § 5-133. Significantly, the firearm restrictions within Title 5 of the Maryland Public Safety Code unambiguously pre-empt local regulations, such as the Prince George's County Code. Section 5-133(a) provides: "This section supersedes any restriction that a local jurisdiction in the State imposes on the possession by a private party of a regulated firearm, and the State preempts the right of any local jurisdiction to regulate the possession of a regulated firearm." Thus, the governing law in Plaintiff's encounter with Defendant was that of the State of Maryland and not of Prince George's County. *See Mora v. City of Gaithersburg*, 462 F. Supp. 2d 675, 690 (D. Md. 2006) (noting that "State law has so thoroughly and pervasively covered the subject of firearms regulation and the subject so demands uniform State treatment, that any non-specified regulation by local governments is clearly pre-empted.").

On the facts presented, Plaintiff fell within no category of persons prohibited by State law from possessing such a regulated firearm. *See* § 5-133(b) (e.g. persons convicted of a disqualifying crime, habitual drunkards, habitual drug users, or persons suffering from a mental disorder). Plaintiff also correctly points out that his "semiautomatic rifle" was not, or most likely not, a "handgun"[5] within the meaning of Md. Code, Crim. Law §§ 4-201–209 (2011).[6]

---

[5] A "handgun" is defined as "a pistol, revolver, or other firearm capable of being concealed on the person. (2) 'Handgun' includes a short-barreled shotgun and a short-barreled rifle. (3) 'Handgun' does not include a shotgun rifle, or antique firearm." Md. Code, Crim. Law § 4-201 (2011).

[6] "Except as provided in subsection (b) of this section, a person may not . . . wear, carry, or transport a handgun, whether concealed or open, on or about the person." Md. Code, Crim. Law § 4-203(a)(1)(i) (2011). Md. Code Crim. Law § 4-209(a) also contains express pre-emption language: "Except as otherwise provided in this section, the State preempts the right of a county, municipal corporation, or special taxing district to regulate the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation of . . . a handgun, rifle, or shotgun." The exceptions in § 4-209(b) provide: "A county . . . may regulate the purchase, sale, transfer, ownership, possession and transportation of items listed in subsection (a) . . . within 100 yards of or in a park, church, school, public building, and other place of public assembly." Notably absent from § 4-209(b) is an exception for a county to regulate said firearms "within 1000 feet of any home or residence, other than his own," as is prescribed by Prince George's County, Md., Code of Ordinances § 14-140.

Plaintiff was also not in violation of §§ 4-301–306,[7] as cited by Defendant, which at the time of his arrest restricted only "assault pistols."[8] § 4-303. Lastly, while Title 5 of the Maryland Public Safety Code clearly outlines permit requirements for handguns, §§ 5-301–314 (2011), no similar permit requirement for other types of firearms appears in the relevant subtitles. Thus, based on the facts available, the Court cannot conclusively find that Plaintiff was unlawfully possessing or carrying his "MP15 semiautomatic rifle" when he was arrested.

However, even if Officer Baath's decision to arrest Blue were based upon a mistake of law, the Supreme Court has made clear that "The Fourth Amendment requires government officials to act reasonably, not perfectly, and gives those officials 'fair leeway for enforcing the law.'" *Heien v. N. Carolina*, 135 S. Ct. 530, 532 (2014) (holding that "a mistake of law" can "nonetheless give rise to the reasonable suspicion necessary to uphold the seizure under the Fourth Amendment."); *see also United States v. Riddle*, 5 Cranch 311 (1809) (holding that reasonable mistakes of law would justify certificates of probable cause); *Cahaly v. Larosa*, 796 F.3d 399, 408 (4th Cir. 2015) (finding that law enforcement officer had probable cause to arrest political consultant based on alleged violation of state statute, noting that "[e]ven if that determination was wrong as a matter of law, officers may have probable cause to arrest based on 'reasonable mistakes of law.'").

Thus, to the extent that Plaintiff is suing Officer Batth in his personal capacity, the doctrine of qualified immunity may apply. Qualified immunity "protects police officers and

---

[7] "Except as provided in subsection (b) of this section, a person may not . . . possess, sell, offer to sell, transfer, purchase, or receive an assault pistol." Md. Code, Crim. Law § 4-303(a) (2011).
[8] An "assault pistol" is defined as "any of the following firearms or a copy regardless of the producer or manufacturer: (1) AA Arms AP-9 semiautomatic pistol; (2) Bushmaster semiautomatic pistol; (3) Claridge HI-TEC semiautomatic pistol . . . [the statute goes on to list a total of 15 'semiautomatic pistols']." Md. Code, Crim. Law § 4-301 (2011). A "pistol" is defined by Merriam-Webster Dictionary as "a handgun whose chamber is integral with the barrel," https://www.merriam-webster.com/dictionary/pistol (last visited Dec. 22, 2016), where a "rifle" is defined as "a shoulder weapon with a rifled bore," https://www.merriam-webster.com/dictionary/rifle (last visited Dec. 22, 2016). Thus, the Court cannot find that a semiautomatic rifle is synonymous with a semiautomatic pistol.

public officials from claims of constitutional violations 'for reasonable mistakes as to the legality of their actions.'" *McDaniel v. Arnold*, 898 F. Supp. 2d 809, 831–32 (D. Md. 2012) (citing *Merchant v. Bauer,* 677 F.3d 656, 661 (4th Cir. 2012)). The protection "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *McDaniel v. Arnold*, 898 F. Supp. 2d at 832 (citing *Pearson v. Callahan,* 555 U.S. 223 (2009)). Qualified immunity "shields government officers from liability for conduct that 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "For a right to be clearly established, its contours 'must be sufficiently clear [such] that a reasonable official would [have] underst[ood] that what he is doing violates that right.'" *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 398 (4th Cir. 2014) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). A "case directly on point" is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Notably, however, neither side has addressed the issue of qualified immunity in their briefing. Thus, pursuant to Fed. R. Civ. P. 56(f)(2), the Court will provide the parties notice and a reasonable opportunity to respond prior to deciding whether summary judgment should be granted based on the doctrine of qualified immunity.

To the extent that Plaintiff is suing Officer Batth in his official capacity, "a § 1983 suit against an officer in his official capacity is no different from a suit against the government entity itself." *Harrison v. McNeill*, Civil No. CCB-07-3399, 2008 WL 2074146, at *3 (D. Md. May 9, 2008) (citing *Will v. Mich. Dep't State Police*, 491 U.S. 58, 71 (1989)). In an official capacity

9

action, the defense of qualified immunity is not available. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985). As the Supreme Court has noted, "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell, supra,* local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Because the Court previously dismissed Count III and terminated Prince George's County from the action, and Plaintiff's remaining action against Officer Batth in his official capacity is merely duplicative of that claim, this remaining action will also be dismissed. *See Lyles v. Prawdzik*, Case No. PWG-15-1056, 2016 WL 3418847, at \*2 (D. Md. June 22, 2016) (noting that "the suit against the officers in their official capacity is duplicative because [Plaintiff] Lyles also has brought a *Monell* claim against [Defendant Town of] Riverdale Park); *Ulloa v. Prince George's County, Md.*, No. DKC-15-257, 2015 WL 7878956, at \*6 (D. Md. Dec. 4, 2015) (holding that "because Plaintiffs have failed to state a plausible *Monell* claim alleging that a policy or custom of the County caused the deprivation of Plaintiffs' rights, Plaintiffs have similarly failed to state a claim under § 1983 against [the police officers] in their official capacities.").

## B. False Imprisonment/False Arrest

Plaintiff additionally brings a claim of false imprisonment and false arrest. As a starting point, it is important to note that, unlike a § 1983 claim, a claim for false imprisonment or false arrest does not turn on whether there was probable cause for the arrest. *Ashton v. Brown*, 339 Md. 70, 120 (1995). To state a claim for common law false imprisonment or false arrest, Blue must show he was deprived of liberty without consent or legal justification. *State v. Dett*, 391 Md. 81, 92 (2006); *Gray v. Maryland*, 228 F. Supp. 2d 628 (D. Md. 2002). The Maryland Court of Appeals has stated that:

10

> [W]hile the presence or absence of probable cause to believe that a
> crime was committed may be pertinent in some cases with regard
> to the lawfulness of the arrest, the actual element of the tort of false
> imprisonment is legal justification rather than probable cause. To
> the extent that the lawfulness of an arrest does not turn upon
> probable cause under Maryland law, probable cause will not be
> determinative of the legal justification issue in a false
> imprisonment action based on that arrest.

*Ashton v. Brown*, 339 Md. 70, 120 (1995).[9] Rather, "where the basis of a false imprisonment

action is an arrest by a police officer, the liability of the police officer for false imprisonment will

ordinarily depend upon whether or not the officer acted within his legal authority to arrest." *Gray*

*v. Maryland*, 228 F. Supp. 2d 628, 641 (D. Md. 2002). Where an officer makes "a warrantless

arrest for a non-felony offense," as here, "Maryland courts have held that 'a police officer is

legally justified only to the extent that a misdemeanor was actually committed in a police

officer's view or presence.'" *Ross v. Early*, 899 F. Supp. 2d 415, 430 (D. Md. 2012); *see* Md.

Code, Crim. Proc., § 2–202 (granting authority to make an arrest without a warrant if police

officer witnesses a misdemeanor or felony being committed in his presence).

As a "duly licensed police officer and employee of Defendant Prince George's County,"

ECF No. 44 ¶ 4, Officer Batth had the legal authority to make a lawful arrest. At the time of his

arrest, Blue was carrying a loaded semiautomatic rifle within 1000 feet of a residential home

other than his own, constituting a misdemeanor under county ordinances. *See* Prince George's

County, Md., Code of Ordinances § 14-140. Thus, as a police officer empowered to arrest a

person who commits a misdemeanor in his presence, Officer Batth exercised his legal authority

to arrest Blue. Again, however, the county ordinance is pre-empted by state firearm regulations.

But as the Supreme Court has noted:

---

[9] As this is a claim brought under state common law, this Court looks to state law in analyzing this claim. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

> Under the prevailing view in this country, a peace officer who
> arrests someone with probable cause is not liable for false arrest
> simply because the innocence of the suspect is later proved . . . the
> same consideration would seem to require excusing him from
> liability for acting under a statute that he reasonably believed to be
> valid, but that was later held unconstitutional on its face or as
> applied.

*Pierson v. Ray*, 386 U.S. 547 (1967); *see also Samuel v. Busnick*, 423 F. Supp. 99 (noting that

"[officer's] good faith, coupled with reasonable grounds to believe one is acting within the law,

should be sufficient to preclude liability for damages."). Nevertheless, the analysis here would

likely overlap with the Court's ruling related to qualified immunity in the context of Plaintiff's

§ 1983 claim, and this issue was not addressed in the pending cross-motions of the parties. Thus,

the Court will deny the motions as filed and permit the parties to address this issue in renewed

motions.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss/Summary Judgment, ECF No.

45, is denied, in part, and granted, in part. The claim against Officer Batth in his official capacity

is dismissed. Plaintiff's Cross-Motion for Summary Judgment, ECF No. 46, is denied. Defendant

is permitted leave to file a renewed motion seeking summary judgment on the basis of qualified

immunity within 14 days of this Order. Plaintiff may also file a renewed motion seeking

summary judgment explaining why qualified immunity does not prevent judgment in their favor

within 14 days of Defendant's filing. A separate Order shall issue.

Date: January 19, 2017

George J. Hazel
United States District Judge