IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

ROGUELL BLUE,

    Plaintiff,

v.

SUKHJIT BATTH,

    Defendant.

Case No.: GJH-15-1024

## MEMORANDUM OPINION

This civil rights action, brought under 42 U.S.C. § 1983, arises from the November 23, 2011 arrest of Plaintiff Roguell Blue by Defendant Sukhjit Batth. In a previous Opinion addressing cross-motions for summary judgment, ECF No. 50, the Court declined to grant summary judgment with respect to the claims against Batth in his individual capacity, but instructed the parties to submit renewed cross motions addressing the applicability of qualified immunity. Now pending before the Court is Defendant's Renewed Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 52, and Plaintiff's Renewed Cross-Motion for Summary Judgment, ECF No. 53. A hearing on the Motion was held on July 7, 2017. *See* Loc. Rule 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion, construed as one for summary judgment, is granted and Plaintiff's Motion is denied.

### I. BACKGROUND[1]

The facts of this case were fully set forth in the Court's previous Opinion, ECF No. 50 at 1–4,[2] but, for ease of reference, the Court will repeat the relevant facts here. On November 23,

---

[1] The facts relied on herein are either undisputed or viewed in the light most favorable to the Plaintiff.

2011, Blue, an agent working for the United States Fugitive Enforcement Agency, was on an assignment to apprehend a male fugitive at the Huntsworth Court townhomes in Capitol Heights, Maryland. ECF No. 44 ¶¶ 5–6. At the time, Blue was wearing a badge, tactical vest, and MP15 semiautomatic rifle[3] around his neck. *Id.* ¶ 6. Blue and his fellow agent, Dana Yeargin, found and apprehended the fugitive at 1015 Huntsworth Court. *Id.* ¶ 8. While Blue and Yeargin were leaving the residence with the fugitive, the Prince George's County police arrived in the parking lot, in response to a 911 call from a neighbor who had seen Blue. *Id.* ¶¶ 11–12. Blue showed the officers his identification, a picture of the fugitive, and a copy of the warrant. *Id.* ¶ 12. At the request of the officers, Blue ejected the magazine from the MP15, demonstrating that it had been loaded. *Id.* ¶ 14.

Blue and the officers, including Officer Sukhjit Batth, began debating whether Blue was required to have a permit to carry his semiautomatic rifle. *Id.* ¶ 14. According to the officers, Maryland law required Blue to have a permit. *See id.* ¶ 15. According to Blue, however, he did not need a permit to lawfully carry a semiautomatic rifle. *Id.* A ranking police official arrived at the scene, had a conversation with Blue about the need for a permit and stated "I have always known that you need a permit to carry anything in the State of Maryland." *Id.* ¶ 15. After some discussion back and forth, Batth handcuffed Blue and informed him that he was being taken in for questioning. *Id.* ¶ 16. Blue called his supervisor who spoke to the officers and explained that Blue was on a lawful assignment. *Id.* Nevertheless, Blue was ultimately arrested for weapons

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[3] The parties refer to this weapon interchangeably as an "MP15" or an "AR-15." *Compare* ECF No. 44 at 2, *with* ECF No. 57. The Court takes judicial notice that the "Smith & Wesson M&P 15" is a "Copy of the Colt AR15." *See* "Maryland State Police Firearms Search," Maryland.gov, http://mdsp.maryland.gov/Organization/Pages/CriminalInvestigationBureau/LicensingDivision/Firearms/FirearmSearch.aspx (last visited on Sept. 14, 2017). *See United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (reasoning that "[t]his court and numerous others routinely take judicial notice of information contained on state and federal government websites"). The Court refers to the firearm as it is labeled in the Complaint, as an "MP15."

violations and taken to the Prince George's County Detention Center. *Id.* ¶ 17. The charges against him were later dropped. *Id.*

This lawsuit followed. At a motions hearing held on February 3, 2016, the Court granted Defendants' Motion to Dismiss Count III of Plaintiff's Second Amended Complaint, which alleged failure to train, supervise, and discipline pursuant to 42 U.S.C. § 1983 against Defendant Prince George's County. ECF No. 36; ECF No. 37. On January 19, 2017, in response to Cross-Motions for Summary Judgment, ECF Nos. 45 and 46, the Court dismissed Count II against Officer Batth in his official capacity, which alleged deprivation of civil rights pursuant to 42 U.S.C. § 1983. ECF No. 50 at 12. However, the Court also determined that, while neither party had addressed the issue, qualified immunity was relevant to the disposition of both motions and therefore denied the remaining portions of the motions, as filed, but invited the parties to file renewed motions discussing the applicability of qualified immunity. ECF No. 50. Both parties have now submitted renewed cross-motions for summary judgment. ECF No. 52; ECF No. 53. In light of those filings, the Court will now address the remaining claims in this action: the § 1983 claim for unconstitutional seizure against Officer Batth in his individual capacity, and the common law false imprisonment/false arrest claim.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) "test[s] the adequacy of a complaint." *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 660 (D. Md. 2011) (citing *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008)). Motions to dismiss for failure to state a claim do "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Prelich*, 813 F. Supp. 2d at 660 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim

3

for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court accepts factual allegations in the complaint as true and construes the factual allegations in the light most favorable to the Plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). The Court should not grant a motion to dismiss for failure to state a claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

Here, Defendant has moved to dismiss or, in the alternative, for summary judgment. ECF No. 45. A motion styled "in the alternative" implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). If the Court considers matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011). However, "the party opposing summary judgment cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). And where "the movant expressly captions its motion, 'in the alternative' as one for summary judgment . . . the parties are deemed to be on notice that the conversion under Rule

4

12(d) may occur; the court 'does not have an obligation to notify parties of the obvious.'" *Hart v. Lew*, 973 F. Supp. 2d 561, 572–73 (D. Md. 2013) (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998)). Here, both sides have moved for summary judgment, and neither side has filed an affidavit or declaration pursuant to Fed. R. Civ. P. 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." *Peters v. City of Mount Rainier*, No. GJH-14-00955, 2014 WL 4855032, at *3 (D. Md. Sept. 29, 2014). Therefore, Defendant's Motion will be construed as one for summary judgment.

Under Rule 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, the Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993).

The party seeking summary judgment bears the initial burden of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met that burden, the non-moving party must come forward and show that such an issue does exist. *See Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "The party opposing a properly supported motion for summary judgment may not rest upon the mere

allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (internal alterations omitted).

Cross-motions for summary judgment require that the Court consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). "The Court must deny both motions if it finds there is a genuine issue of material fact, 'but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment.'" *Wallace v. Poulos*, No. CIV.A DKC 2008-0251, 2009 WL 3216622, at *4 (D. Md. Sept. 29, 2009) (citation omitted).

### III. ANALYSIS

#### A. 42 U.S.C. § 1983 Claim

Blue's suit is brought under 42 U.S.C. § 1983, which creates a "species of tort liability," *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976), for "the deprivation of any rights, privileges, or immunities secured by the Constitution." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017) (citing 42 U.S.C. § 1983). "A plaintiff prevails on a § 1983 claim if he can demonstrate (1) the defendant deprived him of a right secured by the Constitution or the laws of the United States, and (2) the deprivation was achieved by the defendants acting under color of state law." *Ross v. Early*, 899 F. Supp. 2d 415, 426 (D. Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014) (citing *Paul v. Davis*, 424 U.S. 693, 696–97 (1976)).

Here, Blue alleges that Officer Batth violated his civil rights by "falsely detain[ing]" Blue for carrying his loaded MP15 in a residential area without a permit. ECF No. 44 ¶ 1. The Fourth Amendment to the Constitution of the United States protects "the right of the people to be secure

in their persons against unreasonable seizures." *Manuel*, 137 S. Ct. at 917 (internal citations omitted). The "seizure of an individual effected without probable cause is unreasonable." *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 183 (4th Cir. 1996). There is no dispute that Blue was seized when he was arrested by the officers. Thus, in determining whether Blue's § 1983 claim survives Defendants' Motion, the Court must first decide whether the officers had probable cause to arrest Plaintiff.

### 1. Probable Cause

Probable cause exists when the "totality of the circumstances," including the facts and circumstances within an officer's knowledge, would "convince a person of reasonable caution that an offense has been or is being committed." *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000) (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949)). "The evidence needed to establish probable cause is more than a mere suspicion, rumor, or strong reason to suspect but less than evidence sufficient to convict." *United States v. Han*, 74 F.3d 537, 541 (4th Cir. 1996). Probable cause "is an objective test," and courts "examine the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act; we do not examine the subjective beliefs of the arresting officers to determine whether *they* thought that the facts constituted probable cause." *United States v. Gray*, 137 F.3d 765, 769–70 (4th Cir. 1998) (emphasis in original); *see also United States v. Han*, 74 F.3d 537, 541 (4th Cir. 1996) (reasoning that "[t]he Supreme Court's definition of probable cause asks not whether the arresting officer reasonably believed that the arrestee had committed a crime, but whether the evidence was sufficient to support such a reasonable belief" (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "The Fourth Amendment requires government officials to act reasonably, not perfectly, and gives those officials 'fair leeway for enforcing the

law.'" *Heien v. N. Carolina*, 135 S. Ct. 530, 532 (2014). As such, the Court examines relevant Maryland and Prince George's County law to determine whether Officer Baath objectively possessed sufficient facts and circumstances to have probable cause that Blue was committing a crime by carrying his loaded MP15 in a residential neighborhood.

At the time of Blue's arrest, Maryland law considered certain firearms to be "regulated firearms" such that Maryland regulated who could purchase, possess, or transport such firearms, but did not require a permit for all "regulated firearms." *See* Md. Code, Pub. Safety, § 5-101(p) (listing as regulated firearms all "handgun[s]" as well as a number of "assault weapons" including the "AK-47 in all forms" and the "Colt AR-15" "and all imitations"). Maryland required a permit only for an individual possessing a "handgun," Md. Code, Pub. Safety, § 5-303 (2003), and made it a crime to "wear, carry, or transport a handgun" without a permit. Md. Code, Crim. Law, § 4-203 (2011). In the context of this crime, a "handgun" is defined as either "a pistol, revolver, or other firearm capable of being concealed on the person," or "a short-barreled shotgun and a short-barreled rifle." Md. Code, Crim. Law, § 4-201(c) (2008). A short-barreled rifle is defined as a "rifle that has one or more barrels less than 16 inches long" or which "has an overall length of less than 26 inches and that was made from a rifle . . . ." *Id.* § 4-201 (f). A short-barreled shotgun is defined as a "shotgun that has one or more barrels less than 18 inches long" or which "has an overall length of less than 26 inches and was made from a shotgun." *Id.* § 4-201(g).

Viewing the facts in the light most favorable to the Plaintiff, the Court cannot find that Batth objectively had probable cause that Blue was in violation of Maryland state law. While the MP15 likely qualifies as a "regulated firearm,"[4] this fact alone did not require Blue to have a

---

[4] In correspondence with the Court, Batth's attorney contends that the MP15 is a "regulated firearm" because "the AR-15 is a cheaper, civilian copy of the AK-47." ECF No. 157. Whether the MP15 is "copy of the AK-47" or a

8

permit for the gun. Batth would have had probable cause that Blue was in violation of Maryland law only if Blue's MP15 qualifies as a "handgun." Batth does not allege that the MP15 is "a pistol, revolver, or other firearm capable of being concealed on the person," and counsel for Blue proffered to the Court in argument that the MP15 is 16 inches or longer.[5] As such, viewed in the light most favorable to the Plaintiff, Batth did not have probable cause that Blue was in violation of Maryland law, as Maryland law did not require that Blue have a permit to carry his MP15.

However, Batth contends that he had probable cause that Blue was in violation of a Prince George's County ordinance. *See* ECF No. 52 at 5. As this Court acknowledged previously, it is undeniable that Blue was openly in violation of Prince George's County, Md., Code of Ordinances § 14-140(a), which provides that "[n]o person shall . . . have in his possession, while loaded . . . any firearm . . . within one thousand feet (1,000') of any home or residence, other than his own . . . ." *See* ECF No. 50 at 6. Thus, Officer Batth would have objectively had probable cause that Blue was in violation of this ordinance, as at the time of his arrest, Blue was wearing a loaded MP15 rifle around his neck in a residential neighborhood. *See id.* (citing ECF No. 44 at 2).

Blue responds that while he was in violation of § 14-140(a), the Prince George's County ordinance "was preempted by Maryland state law." ECF No. 53 at 5. Indeed, the Court previously acknowledged that Titles 4 and 5 of the Maryland Code preempt local regulations of firearms. *See* ECF No. 50 at 7 (citing to Md. Code, Pub. Safety § 5-133(a)), and at 7 n. 6 (citing to Md. Code, Crim. Law § 4-209(a)). It is true that Maryland has preempted "the right of a

---

"Copy of the Colt AR15," *see supra* n.3, both of these weapons are included in Maryland's definition of "regulated firearm." *See* Md. Code, Pub. Safety, § 5-101(p) (listing as "regulated firearms" both the "AK-47 in all forms" and the "Colt AR-15 . . . and all imitations").

[5] Were this case to survive, the Court would have required Plaintiff to amend the Complaint before considering this fact.

county . . . to regulate the . . . possession . . . of . . . a handgun, rifle, or shotgun . . . ." MD. Code Ann., Crim. Law, § 4-209 (2010).

However, in its preemption statute, Maryland included a grandfather clause, which provided that "[t]o the extent that a local law does not create an inconsistency with this section or expand existing regulatory control, a county . . . may exercise its existing authority to amend any local law that existed on or before December 31, 1984." *Id.* § 4-209(c).[6] Here, § 14-140(a) was originally enacted in 1963, *see* Prince George's County, Md., Gen. Res. No. 11-1963, and is not preempted so long as it does not create an inconsistency with Maryland law or expand existing regulatory control. The Court need not conclude whether the ordinance is still valid under the grandfather clause or is preempted, because Officer Batth is entitled to summary judgment in either case. At most, the status of the ordinance was unclear at the time, as "there was no controlling precedent that this ordinance was or was not [preempted], and hence the conduct observed violated a presumptively valid ordinance." *Heien*, 135 S. Ct. 530 (citing *Michigan v. DeFillippo*, 443 U.S. 31 (1979) (upholding arrest made under a criminal law later declared unconstitutional)).[7] If the ordinance is still valid, Officer Batth clearly had probable cause to arrest Blue.[8] Even if the ordinance is in fact preempted, however, the Court finds that Officer Batth is entitled to qualified immunity, as discussed below.

---

[6] This clause has not been raised by the parties nor was it identified in the Court's previous opinion.

[7] The Court notes that its previous Memorandum Opinion cites *Mora v. City of Gaithersburg*, 462 F. Supp. 2d 675, 690 (D. Md. 2006), for the proposition that "State law has so thoroughly and pervasively covered the subject of firearms regulation and the subject so demands uniform State treatment, that any non-specified regulation by local governments is clearly pre-empted." In a recent Maryland Court of Special Appeals case, however, the court reasoned that "the State has *not* so extensively regulated the field of firearm use, possession, and transfer that all local laws relating to firearms are preempted." *State v. Phillips*, 63 A.3d 51, 76 (Md. 2013) (emphasis added). This lack of clarity regarding the preemption of local law on this issue further enforces Batth's argument for qualified immunity, discussed below.

[8] The Court acknowledges that based on the facts alleged–which Defendant has not disputed–Officer Batth detained Blue not for a violation of § 14-140(a), but for an incorrect determination that "you need a permit to carry [any firearm] in the State of Maryland." ECF No. 44 at 4. Counsel for Defendant conceded at argument that this was incorrect, and that Blue did not need a permit for his MP15. However, as discussed above, the Fourth Circuit has made clear that probable cause "is an objective test," and courts "examine the facts within the knowledge of

## 2. Qualified Immunity

The doctrine of qualified immunity shields police officers performing discretionary duties from "civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "protects police officers and public officials from claims of constitutional violations 'for reasonable mistakes as to the legality of their actions.'" *McDaniel v. Arnold*, 898 F. Supp. 2d 809, 831–32 (D. Md. 2012) (citing *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir. 2012)). This doctrine "applies regardless of whether the officer's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567 (citing *Butz v. Economou*, 438 U.S. 478, 507 (1978)); *see also Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (noting that qualified immunity protects law officers from "bad guesses in gray areas," such that they are personally liable only "for transgressing bright lines").

An officer is protected from liability under § 1983 based on qualified immunity unless 1) the facts alleged show the officer's conduct violated a constitutional right, and 2) the right violated was clearly established at the time the officer's conduct occurred. *See Streater v. Wilson*, 565 F. App'x. 208, 210 (4th Cir. 2014). With respect to the second prong, "[f]or a right to be clearly established, its contours 'must be sufficiently clear [such] that a reasonable official would [have] underst[ood] that what he is doing violates that right.'" *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 398 (4th Cir. 2014) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A "case directly on point" is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563

---

arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act; we do not examine the subjective beliefs of the arresting officers to determine whether *they* thought that the facts constituted probable cause." *Gray*, 137 F.3d at 769–770 (emphasis in original).

U.S. 731, 741 (2011); *see also Mathis v. McDonough*, No. CIV.A. ELH-13-2597, 2015 WL 3853087, at *23 (D. Md. June 19, 2015) ("In determining whether a right was clearly established, courts in this Circuit ordinarily need not look beyond the decisions of the Supreme Court, the Fourth Circuit, and the highest court of the state in which the case arose, as of the date of the conduct at issue.") (citing *Doe ex rel. Johnson v. S.C. Dept. of Soc. Servs.*, 597 F.3d 163, 176 (4th Cir. 2010)) (internal alterations omitted).

Here, the Court finds that it was not "clearly established" that Blue could lawfully walk through a residential neighborhood in Prince George's County with a loaded MP15. As previously discussed, Blue was clearly in violation of Prince George's County Ordinance § 14-140, as he was in possession of a loaded firearm in a residential neighborhood. Although Blue contends that this ordinance was "preempted by Maryland state law," the Court finds that this was not clearly established. As discussed above, to determine whether the ordinance was preempted would have required a determination of whether the ordinance was inconsistent with Maryland law, or expanded the regulatory scope; while the Court finds that officers must know the law, it cannot ask that officers also engage in the type of interpretation required of lawyers. *Cf. Amore v. Novarro*, 624 F.3d 522, 533–34 (2d Cir. 2010) ("In determining whether an officer is entitled to qualified immunity, the question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in a defendant's position should know about the constitutionality of the conduct." (internal quotations omitted)). Plaintiff has not identified, nor is the Court aware of, any precedent placing as "beyond debate," *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014), Blue's right to carry a loaded, semi-automatic rifle in a residential neighborhood. Even viewing the facts in the light most favorable to Plaintiff, this right was not

clearly established, and Defendant Batth is thus entitled to qualified immunity. Defendant's Motion is granted with respect to the § 1983 claim.

### B. False Imprisonment/False Arrest

To prevail on a claim for common law false imprisonment or false arrest, Blue must establish that he was deprived of liberty without consent or legal justification. *State v. Dett*, 391 Md. 81, 92 (2006); *Gray v. Maryland*, 228 F. Supp. 2d 628 (D. Md. 2002). The legal justification to detain is equivalent to legal authority under the law of arrest. *See Montgomery Ward v. Wilson*, 339 Md. 701, 721 (1995). "Therefore, where the basis of a false imprisonment action is an arrest by a police officer, the liability of the police officer for false imprisonment will ordinarily depend upon whether or not the officer acted within his legal authority to arrest." *Id.* In Maryland, "[a] police officer who has probable cause to believe that a misdemeanor is being committed in the officer's presence or within the officer's view, may arrest without a warrant any person whom the officer may reasonably believe to have committed such offense." *Ashton v. Brown*, 339 Md. 70, 122 (1995) (internal alterations omitted); Md. Code, Crim. Proc., § 2–202 (granting authority to make an arrest without a warrant if police officer witnesses a misdemeanor or felony being committed in his presence); *see also Ross*, 899 F. Supp. 2d at 430 (discussing false arrest and imprisonment claims). "To determine if an officer had legal authority to make a warrantless arrest for a non-felony, the court must ask if, in the light most favorable to the plaintiff, a fact-finder could infer the plaintiff was not committing the charged crime." *Ross v. Early*, 899 F. Supp. 2d 415, 430 (D. Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014).

For the same reasons as discussed above, the Court finds that Batth is entitled to summary judgment on Blue's false arrest/false imprisonment claims. At the time of his arrest, Blue was carrying a loaded firearm within 1000 feet of a residential home other than his own,

constituting a misdemeanor under county ordinance. *See* Prince George's County, Md., Code of Ordinances § 14-140. Blue displayed this weapon in the plain view of the officers. Thus, as a police officer empowered to arrest a person who commits a misdemeanor in his presence, Officer Batth exercised his legal authority to arrest Blue. Moreover, good faith and a reasonable belief that a misdemeanor is being committed is a defense to the common law torts of false arrest and imprisonment. *See Pierson v. Ray*, 386 U.S. 547, 557 (1967); *Thompson v. Anderson*, 447 F. Supp. 584, 600 (D. Md. 1977) (finding good faith defense precluded recovery on false imprisonment claim because officer reasonably believed arrest was legal). Given the uncertain application of the competing firearm restrictions, no reasonable fact finder could conclude that Officer Batth did not act in good faith in making the arrest of Blue. Accordingly, Defendant's Motion is also granted with respect to the false imprisonment/false arrest claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 52, is granted. Plaintiff's Cross-Motion for Summary Judgment, ECF No. 53, is denied. A separate Order shall issue.

Date: September 18, 2017

GEORGE J. HAZEL
United States District Judge